# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| CYNTHIA ROWELL, | ) |
| PLAINTIFF, | ) |
| v. | ) CIVIL ACTION NO.: |
| GRID SERVICES, LLC., | ) JURY DEMAND |
| DEFENDANT. | ) |

## COMPLAINT

### I. INTRODUCTION

1. Through this complaint, Plaintiff asserts federal claims of sexual harassment and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., as amended by the Civil Rights Act of 1991, and 42 U.S.C. Section 1981a ("Title VII") against Defendant. Through supplemental jurisdiction, this Court's jurisdiction extends to the related state law claims of invasion of privacy, outrage, and negligent and/or wanton hiring, training, supervision, and/or retention because all such claims arise from a "common nucleus of operative fact."

### II. JURISDICTION, VENUE AND ADMINISTRATIVE PREREQUISITES

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343,

1

2201 and 2202. Venue is proper in the Middle District of Alabama under 28 U.S.C. §1391(b), and the Northern Division pursuant to Title VII's venue provision, 42 U.S.C. § 2000e-5(f).

3. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. Plaintiff timely filed her initial charge of discrimination on January 24, 2024, which was within 180 days of the occurrence of the last discriminatory acts she endured. Plaintiff timely filed her lawsuit within 90 days of the receipt of her Right-To-Sue Letter from the Equal Employment Opportunity Commission, issued on July 25, 2024.

### III.   PARTIES

4. Plaintiff, Cynthia Rowell ("Plaintiff"), is a resident of Alabama, is over the age of nineteen, and is a female citizen of the United States. Plaintiff was an employee of Defendant as defined under Title VII.

5. Defendant Grid Services, LLC. ("Defendant") is an entity subject to suit under Title VII and employs at least fifteen (15) persons.

### IV.   FACTUAL ALLEGATIONS

6. Plaintiff began working at Defendant on June 26, 2023, as a Groundman through the IBEW union when she was hired by a General Foreman named Kelly Ward.

7. Plaintiff worked storms for Grid Services, and she also worked in the quarry

owned by the common owner of Grid Services. While working in the quarry Defendant classified her as a laborer.

8. Plaintiff was the only female working for Defendant in the quarry and was one of only two women working for Defendant in the field.

9. Not long after Plaintiff began her employment, she was subjected to sexual harassment from supervisors and coworkers.

10. Defendant did not provide Plaintiff with any policies or training on sexual harassment and what steps she should take if she was subjected to sexual harassment.

11. A manager over the quarry named Kevin constantly and continuously told Plaintiff she needed to break up with her boyfriend and have sex with him and other men working in the quarry.

12. When Plaintiff did not work in the quarry, she worked storm crews for Defendant as a groundman. Around late September 2023, the foreman on a job out of town named Richard Swaim stopped Plaintiff in the hotel they were staying at, handed her an extra key to his room, and told her how she should come by because he wanted to have sex with her.

13. Plaintiff reported what Swaim had said to her to General Foreman Kelly Ward, but nothing was done to Swaim.

14. Plaintiff was also sexually harassed by an Operator in the quarry named David. David asked Plaintiff if her "titties" where real before he grabbed them.

3

Plaintiff reported this to the supervisor over the job site who said he would handle it, but again, nothing was done to stop the sexual harassment.

15. The next incident of sexual harassment came from a man named Shane Huse, who was a General Foreman on another out-of-town storm damage job in November or December 2023.

16. At that time Plaintiff was working as an Operator, having been promoted to that position through her union in October 2023.

17. Huse treated Plaintiff differently from her male coworkers by only communicating his instructions to the crew through her and spending an inordinate amount of time with her.

18. Huse told Plaintiff how good looking she was and told her she needed to be careful out there with all those men.

19. Plaintiff's boyfriend at the time, Josh Swindall, was also working for Grid Services in a temporary position on the same storm damage job as Plaintiff.

20. Swindall drove his vehicle to meet with Plaintiff, and when Huse saw Swindall and Plaintiff together, he said to them, "this does not need to become a problem."

21. Huse's attitude towards Plaintiff changed into hostility towards her after he understood that she had a boyfriend and was not interested in his advances.

22. In January 2024, Defendant no longer allowed Plaintiff to work in the quarry

and when she worked storms, Defendant demoted her to groundman, which negatively impacted her income.

23. In early January 2024, Plaintiff and Swindall drove to a job where a storm had caused damage in New York and Connecticut.

24. The first night Plaintiff and Swindall arrived, the Defendant's administrative office person, Jordan Wimberly, placed Plaintiff and Swindall together in a hotel in Hartford, Connecticut.

25. The first morning of work, Defendant assigned Plaintiff and Swindall to different jobs with different General Foremen, but because they were headed to the same location, Swindall got into the digger truck Plaintiff was driving to ride with her.

26. Before leaving the parking lot, Huse told Swindall to get out of the truck with Plaintiff and ride in a different truck with another man. Swindall did as he was told, even though it made no sense as they were going to the same place.

27. Defendant instructed employees to room with the same person with whom they had roomed the prior night, so Plaintiff and Swindall roomed together.

28. The next day Plaintiff and Swindall were assigned to work in different locations, and Plaintiff was put on a crew with a man named Brandon who had told Plaintiff's General Foreman, Kelly Ward, that he wanted to sleep with Plaintiff and was going to try to get with her, which Plaintiff learned of.

29. At the end of the shift, Swindall did not have a place to stay, and Plaintiff had informed him about Brandon, so Swindall drove the digger truck he had been assigned to stay the night again with Plaintiff.

30. On January 14, 2024, Defendant terminated Plaintiff and did not give her a reason for her termination.

31. Plaintiff filed an EEOC Charge against Defendant on January 24, 2024.

32. On March 18, 2024, Defendant responded to Plaintiff's EEOC Charge and explained it terminated Plaintiff because her boyfriend, Swindall, drove his digger truck too long of a distance to meet her in bad weather. In particular, Defendant wrote as follows to the EEOC:

> Swindall drove approximately 50 miles in snowy and icy conditions to see Ms. Rowell after their storm duty in January 2024 in Buffalo, NY. As a result of this Ms. Rowell and Swindall were both informed that they were no longer needed for storm duty on January 14, 2024.

33. Plaintiff did not violate any rule, and Defendant does not terminate its male employees for the similar actions of their coworkers.

34. Defendant replaced Plaintiff with a man.

35. Defendant's articulated reason for terminating Plaintiff is not legitimate, and Defendant's reasons are a pretext to hide the fact that it terminated Plaintiff because of her female gender.

36. In the alternative, even if Defendant had a legitimate reason for terminating Plaintiff, her female gender remained at least a motivating factor in the termination

6

decision.

37. Defendant, by and through its agents, engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's federally protected rights.

38. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, compensatory and punitive damages is her only means of securing adequate relief.

39. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## V.     CAUSES OF ACTION

### A.     COUNT I - SEXUAL HARASSMENT UNDER TITLE VII

40. Plaintiff brings this Count pursuant to Title VII of the Act of Congress known as the Civil Rights Act of 1964 42 U.S.C. Section 2000e et seq., as amended, and 42 U.S.C. Section 1981a.

41. Defendant subjected Plaintiff to a sexually hostile work environment that was sufficiently severe or pervasive to alter the terms and conditions of her employment.

42. The hostile work environment was objectively and subjectively hostile and abusive because a reasonable person would find the work environment endured by Plaintiff hostile and abusive, Plaintiff perceived the environment to be hostile and

abusive, and the harassment negatively impacted Plaintiff's employment by making it more difficult for her to do her job.

43.     Plaintiff subjectively perceived the sexually harassing treatment she endured to be hostile and abusive, and such conduct actually negatively impacted the conditions of her employment.

44.     Defendant failed to guard against the misconduct of its employees, failed to train their managers and employees, failed to monitor their performance and conduct, and failed to take adequate remedial action.

45.     Defendant had no effective sexual harassment policies, had no effective procedures for handling complaints of sexual harassment and if Defendant had such a policy it failed to inform Plaintiff of it.

46.     Defendant was made aware of this hostile and abusive environment and continuously refused to take appropriate remedial action.

47.     Defendant ratified and/or condoned such hostile and abusive behavior by failing to take appropriate action.

48.     Defendant is directly and vicariously liable for the conduct of its employees that amounted to the sexual harassment suffered by Plaintiff.

49.     The sexually harassing conduct towards Plaintiff and Defendant's ratification of such conduct adversely affected Plaintiff's job because the conduct unreasonably interfered with Plaintiff's employment to such an extent that it made it more difficult

for Plaintiff to do her job.

50. Defendant, by and through its agent, engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's federally protected rights.

51. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory and punitive damages is her only means of securing adequate relief.

52. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

### B. COUNT II - GENDER DISCRIMINATION

53. Defendant discriminated against Plaintiff based on her by taking the above adverse actions against her up to and including demoting her, taking work away from her and terminating her.

54. Defendant's articulated reasons for these adverse employment actions described in the facts of this complaint are not legitimate; in the alternative, Plaintiff may prevail under a mixed-motive theory, as even if Defendant had legitimate reasons for terminating her, gender was at least a motivating factor in the adverse employment actions Defendant took against her.

55. Said discrimination was done maliciously, willfully, and with reckless

disregard for the rights of Plaintiff.

56. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and the damages sought in this complaint are her only means of securing adequate relief.

57. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

### C.  COUNT III – INVASION OF PRIVACY

58. Defendant, through the acts of its agents, invaded the privacy of Plaintiff by intruding into Plaintiff's private seclusion by engaging in the unwelcome sexual conduct as set forth above.

59. Defendant authorized, ratified and/or condoned its agents' actions which amounted to an invasion of Plaintiff's privacy.

60. Defendant engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's rights.

### D.  COUNT IV – NEGLIGENT AND/OR WANTON HIRING, SUPERVISION, TRAINING, AND/OR RETENTION.

61. This is a claim arising under the law of the State of Alabama to redress the negligent and/or wanton, hiring, supervision, training, and retention of the employee who committed the sexually harassing acts against Plaintiff, including the above-described invasion of privacy in violation of the common law of the State of

Alabama.

62. Defendant negligently and/or wantonly failed to adequately hire, supervise, train, and/or negligently retained, its agents or employees which proximately caused the sexually harassing acts against the Plaintiff, including the above-described invasion of privacy in violation of the common law of the State of Alabama.

### E.    COUNT V – OUTRAGE

63. Defendant, by and through its agents and through its own indifference to sexual harassment, outrageously and intentionally inflicted emotional distress upon Plaintiff, by subjecting her to abusive and harmful sexual misconduct which was ratified and condoned by Defendant.

64. Defendant and its agents caused Plaintiff severe emotional distress by such sexual misconduct, beyond what any employee should be expected to endure. Plaintiff's emotional distress was the foreseeable result of Defendant's actions and inactions as set forth above.

65. The conduct described above was extreme, outrageous and beyond the boundaries of decency in a civilized society and caused Plaintiff to suffer emotional distress.

66. Defendant engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's rights.

## VI.    DAMAGES

67. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

68. Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish and lost wages and other pecuniary losses as a consequence of Defendant's unlawful conduct.

69. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory and punitive damages is her only means of securing adequate relief.

## VII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendant are violative of the rights of Plaintiff as secured by Title VII.

2. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII.

3. Enter an Order requiring Defendant and to make Plaintiff whole by awarding her backpay, reinstatement, front pay if reinstatement is not possible, compensatory,

punitive, or nominal damages.

4. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses and post judgment interest.

**Plaintiff Demands a Trial by Struck Jury on All Issues Triable by a Jury.**

Respectfully submitted,

/s/ Jon C. Goldfarb
Jon C. Goldfarb asb-5401-f58j
L. William Smith asb-8660-a61s
Christina M. Malmat asb-1214-y44q
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS, FISHER,
& GOLDFARB, LLC.
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500